# FREEMAN *v.* ALDERSON.

ERROR TO THE CIRCUIT COURT OF THE UNITED STATES FOR THE
NORTHERN DISTRICT. OF TEXAS.

Argued November 2, 1886. — Decided November 29, 1886.

A personal judgment for costs may not be rendered against the defendant, on default, in an action of trespass to try title to real estate, if citation was served on him by publication, as a non-resident, and not personally; and if such judgment be entered, it cannot be enforced against other property of the defendant within the jurisdiction of the court.

The following was the case as stated by the court.

This was an action of trespass to try the title to certain land in Texas. It is the form in use to recover possession of real property in that State.

The plaintiffs claimed the land under a deed to their grantor, executed by the sheriff of McLennan County, in that State, upon a sale under an execution issued on a judgment in a State court for costs, rendered against one Henry Alderson, then owner of the property, but now deceased.

The defendants asserted title to the land as heirs of Alderson, contending that the judgment, under which the alleged sale was made was void, because it was rendered against him without personal service of citation, or his appearance in the action.

The material facts of the case, as disclosed by the record, are briefly these: On the 16th of July, 1855, a tract of land comprising one third of a league was patented by Texas to Alderson, who had been a soldier in its army. One undivided half of this tract was claimed by D. C. Freeman and G. R. Freeman, and they brought an action against him for their interest. The pleadings in that action are not set forth in the transcript, but from the record of the judgment therein, which was produced, we are informed that the defendant was a non-resident of the State, and that the citation to him was made by publication. There was no personal service upon him, nor did he

appear in the action. The judgment, which was rendered on the 1st of October, 1858, was of a threefold character. It first adjudged that the plaintiffs recover one undivided half of the described tract. It then appointed commissioners to partition and divide the tract, and set apart, by metes and bounds, one half thereof, according to quantity and quality, to the plaintiffs ; and to make their report at the following term of the court. And, finally, it ordered that the plaintiffs have judgment against the defendant for all costs in the case, but stayed execution until the report of the commissioners should be returned and adopted, and a final decree entered.

At the following term, the commissioners made a report showing that they had divided the tract into two equal parcels. The report was confirmed, and on the 31st of March, 1859, the court adjudged that the title to one of these parcels was divested from Alderson and vested in the plaintiffs, the two Freemans, and that they recover all costs in that behalf against him, which were $61.45, and that execution issue therefor. Execution therefor was issued to the sheriff of McLennan County on the 30th of May, directing him to make the amount out of "the goods, chattels, lands, and tenements" of the defendant. It was levied on the other half of the divided tract, which remained the defendant's property. On the 5th of July, 1859, this half was sold by the sheriff to one James E. Head for $66.79, being the costs mentioned and his fees for the levy and for his deed, which was executed to the purchaser. In September following, Head conveyed the premises to D. C. Freeman, for the alleged consideration of $178. Two of the defendants disclaimed having any interest. The other defendants, including Freeman, so far as their title is disclosed by the transcript, claimed under the sheriff's deed.

On the trial, the defendants, to show title out of the plaintiffs, offered in evidence the judgment for the costs, the execution issued thereon, and the sheriff's deed ; to the introduction of which the plaintiffs objected, on the ground that the judgment for costs was a judgment *in personam*, and not *in rem*, and was rendered against the defendant, who was a non-resident of the State, without his appearance in the action or personal

service of citation upon him, but upon a citation by publication only, and therefore constituted no basis of title in the pur-chaser under the execution.

The court sustained the objection and excluded the docu-ments from the jury; and the defendants excepted to the ruling. No other evidence of title being produced by the defendants, a verdict was found for the plaintiffs, and judg-ment in their favor was entered thereon; to review which the case is brought to this court on a writ of error.

*Mr. M. F. Morris* for plaintiff in error.

*Mr. L. W. Goodrich* and *Mr. E. H. Graham* for defendants in error, submitted on their briefs.

Mr. Justice Field, after stating the case, delivered the opinion of the court, as follows:

Actions *in rem*, strictly considered, are proceedings against property alone, treated as responsible for the claims asserted by the libellants or plaintiffs. The property itself is in such actions the defendant, and, except in cases arising during war for its hostile character, its forfeiture or sale is sought for the wrong, in the commission of which it has been the instrument, or for debt. or obligations for which by operation of law it is liable. The court acquires jurisdiction over the property in such cases by its seizure, and of the subsequent proceedings by public citation to the world, of which the owner is at liberty to avail himself by appearing as a claimant in the case.

There is, however, a large class of cases which are not strictly actions *in rem*, but are frequently spoken of as actions *quasi in rem*, because, though brought against persons, they only seek to subject certain property of those persons to the discharge of the claims asserted. Such are actions in which property of non-residents is attached and held for the dis-charge of debts due by them to citizens of the State, and ac-tions for the enforcement of mortgages, and other liens. Indeed, all proceedings having for their sole object the sale or other disposition of the property of the defendant to satisfy the

demands of the plaintiff, are in a general way thus designated. But they differ, among other things, from actions which are strictly *in rem*, in that the interest of the defendant is alone sought to be affected, that citation to him is required, and that judgment therein is only conclusive between the parties.

The State has jurisdiction over property within its limits owned by non-residents, and may, therefore, subject it to the payment of demands against them of its own citizens. It is only in virtue of its jurisdiction over the property, as we said on a former occasion, that its tribunals can inquire into the non-resident's obligations to its own citizens; and the inquiry can then proceed only so far as may be necessary for the disposition of the property. If the non-resident possesses no property in the State, there is nothing upon which its tribunals can act. *Pennoyer* v. *Neff*, 95 U. S. 714, 723. They cannot determine the validity of any demand beyond that which is satisfied by the property. For any further adjudication, the defendant must be personally served with citation or voluntarily appear in the action. The laws of the State have no operation outside of its territory, except so far as may be allowed by comity; its tribunals cannot send their citation beyond its limits and require parties there domiciled to respond to proceedings against them; and publication of citation within the State cannot create any greater obligation upon them to appear. *Ib.*, page 727. So, necessarily, such tribunals can have no jurisdiction to pass upon the obligations of non-residents, except to the extent and for the purpose mentioned.

This doctrine is clearly stated in *Cooper* v. *Reynolds*, 10 Wall. 308, where it became necessary to declare the effect of a personal action against an absent party without the jurisdiction of the court, and not served with process or voluntarily appearing in the action, and whose property was attached, and sought to be subjected to the payment of the demand of the resident plaintiff. After stating the general purpose of the action, and the inability to serve process upon the defendant, and the provision of law for attaching his property in such cases, the court, speaking by Mr. Justice Miller, said:

"If the defendant appears, the cause becomes mainly a suit *in personam*, with the added incident that the property attached remains liable, under the control of the court, to answer to any demand which may be established against the defendant by the final judgment of the court. But if there is no appearance of the defendant, and no service of process on him, the case becomes in its essential nature a proceeding *in rem*, the only effect of which is to subject the property attached to the payment of the demand which the court may find to be due to the plaintiff. That such is the nature of this proceeding in this latter class of cases is clearly evinced by two well-established propositions: First, the judgment of the court, though in form a personal judgment against the defendant, has no effect beyond the property attached in that suit. No general execution can be issued for any balance unpaid after the attached property is exhausted. No suit can be maintained on such a judgment in the same court, or in any other; nor can it be used as evidence in any other proceeding not affecting the attached property; nor could the costs in that proceeding be collected of defendant out of any other property than that attached in the suit. Second, the court, in such a suit, cannot proceed unless the officer finds some property of defendant on which to levy the writ of attachment. A return that none can be found is the end of the case, and deprives the court of further jurisdiction, though the publication may have been duly made and proven in court." Page 318.

To this statement of the law it may be added, what, indeed, is a conclusion from the doctrine, that whilst the costs of an action may properly be satisfied out of the property attached, or otherwise brought under the control of the court, no personal liability for them can be created against the absent or non-resident defendant; the power of the court being limited, as we have already said, to the disposition of the property, which is alone within its jurisdiction.

The pleadings in the case in which judgment was rendered for costs against Alderson are not before us. We have only the formal judgment, from which it should seem that the action was to recover an undivided interest in the property, and then

to obtain a partition of it, and have that interest set apart in severalty to the plaintiffs — a sort of mixed action to try the title of the plaintiffs to the undivided half of the property, and to obtain a partition of that half. Such action, though dealing entirely with the realty, is not an action *in rem* in the strict sense of the term; it is an action against the parties named, and, though the recovery and partition of real estate are sought, that does not change its character as a personal action; the judgment therein binds only the parties in their relation to the property. The service of citation by publication may suffice for the exercise of the jurisdiction of the court over the property so far as to try the right to its possession, and to decree its partition; but it could not authorize the creation of any personal demand against the defendant, even for costs, which could be satisfied out of his other property.

The judgment is for all the costs in the case, and no order is made that they be satisfied out of the property partitioned. Had satisfaction been thus ordered, no execution would have been necessary. The execution, also, is general in its direction, commanding the sheriff to make the costs out of any property of the defendant.

The judgment, as far as the costs are concerned, must, therefore, be treated as a judgment *in personam*, and, for the reason stated, it was without any binding obligation upon the defendant; and the execution issued upon it did not authorize the sale made, and, of course, not the deed of the sheriff. Were the conclusion otherwise, it would follow, as indeed it is claimed here, that a joint owner of real property might sue a non-resident co-tenant for partition, and, having had his own interest set apart to himself, proceed to sell out on execution the interest of his co-tenant for all the costs.

The judgment of the court below must be

*Affirmed.*